Valerie HARLSTON, Plaintiff–Appellant,

v.

McDONNELL DOUGLAS CORPORATION, Defendant–Appellee.

No. 93–3119.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1994.

Decided Sept. 29, 1994.

380

Henry Thomas, St. Louis, MO, argued, for appellant.

Patricia L. Cohen, St. Louis, MO, argued, for appellee.

Before WOLLMAN, Circuit Judge, and ROSS and JOHN R. GIBSON, Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

Valerie Harlston appeals from the district court's [1] entry of summary judgment against her on her age and race discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17, and 42 U.S.C. § 1981, as both were amended by The Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1074 (1991); and under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34. Harlston claims that McDonnell Douglas discriminated against her on the basis of race and age when it gave her a poor evaluation and then transferred her to a different secretarial job in retaliation for Harlston's filing discrimination charges. On appeal, Harlston argues that the district court erred in concluding that she had no action under 42 U.S.C. § 1981, as amended, because her reassignment occurred before November 21, 1991, the date section 1981 was amended. Harlston also claims that the

1. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

district court erred in holding that she failed to state a disparate impact claim under Title VII or the ADEA, and failed to make a prima facie showing of discrimination. We affirm the district court's entry of summary judgment.

McDonnell Douglas hired Harlston as a secretary in 1974. She is black and, at the time of the alleged discrimination, was 51 years old. On October 21, 1991, a new supervisor gave Harlston a written interim performance review covering May through August of 1991. Despite positive evaluations in the past, Harlston received a poor evaluation.

On November 9, 1991, the director of Harlston's division held a meeting and informed employees that there was going to be a reduction in force, and that low performers might be laid off or reassigned. Three days later, Harlston's supervisor told her she was on the layoff/reassignment list.

Harlston filed an EEOC charge on November 27, 1991, claiming that McDonnell Douglas placed her on the layoff list because of her October evaluation, and that the evaluation was discriminatorily motivated to preserve the positions of younger, white employees. McDonnell Douglas reassigned Harlston to a different position, effective January 24, 1992, but did not change her job title, salary, or benefits. On February 12, 1992, Harlston filed another charge with the EEOC, alleging that her reassignment was retaliatory. Harlston sued McDonnell Douglas alleging violations of Title VII and section 1981, as both were amended by the Civil Rights Act of 1991, and violation of the Age Discrimination in Employment Act.

The district court granted McDonnell Douglas' motion for summary judgment. The district court first entered judgment for McDonnell Douglas on Harlston's claim under section 1981, as amended, reasoning that the challenged conduct (the October 1991 evaluation and placement on the November 12, 1991, reassignment list) occurred before the enactment date of the Civil Rights Act of

1991, which amended section 1981. *Harlston v. McDonnell Douglas Corp.*, No. 4:92CV01729 GFG, slip op. at 3, 1993 WL 741182 (E.D.Mo. July 6, 1993). The court also dismissed Harlston's age and race discrimination claims under Title VII and the Age Discrimination in Employment Act. *Id.* at 4–5. The court held that Harlston failed to state a disparate impact claim because she alleged a personally discriminatory act against her, not a race and age neutral policy that had a disparate impact on a protected group. *Id.* at 4. The court dismissed her individual discrimination claims because Harlston had no evidence that the evaluation and subsequent transfer were the result of age or race discrimination. *Id.* at 5. Her salary and benefits were not changed. *Id.* at 3. Harlston appeals.

## I.

Harlston first argues that the district court erred in dismissing her claim under section 1981, as amended by the Civil Rights Act of 1991. The district court reasoned that Harlston's allegation of discrimination arose from McDonnell Douglas' October 1991 evaluation and Harlston's placement on the November 12, 1991 layoff/reassignment list, and that these events occurred before the November 21, 1991, enactment date of the Civil Rights Act of 1991. Slip op. at 3.

Harlston argues that McDonnell Douglas' acts of discrimination extended beyond November 21, 1991, thus making them actionable under the 1991 Act[2]. As examples, she points to her January 9, 1992, reassignment and March 10, 1992, final evaluation. She characterizes these events as retaliatory, and therefore, discriminatory, conduct after the Act's enactment date.

Neither of these acts brings the challenged conduct within the post-enactment period. It is undisputed that McDonnell Douglas notified Harlston on November 12, 1991, that she would be reassigned or laid off.

---

**2.** Harlston does not argue that the 1991 Act's amendments to section 1981 should be applied retroactively. In *Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1378 (8th Cir.1992), we held they would not be. This ruling is bolstered by

the Supreme Court's holding in *Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), that section 102 of the Civil Rights Act of 1991 would not be retroactive.

Although Harlston did not learn of the consequence of her notification until January 9, an employee's claim accrues on the date she is notified of the employer's decision, not on the date the decision becomes effective. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980).

█ Similarly, Harlston's March 10, 1992, evaluation does not bring her claim within the reach of the Act. That evaluation is neither the subject of any EEOC charge nor mentioned in her complaint. *See Smith v. Office of Economic Opportunity,* 538 F.2d 226, 228 (8th Cir.1976) (claims which are not the subject of an EEOC charge are not within the jurisdiction of the court). Likewise, we reject Harlston's claim that her reassignment was a separate, retaliatory act for filing an EEOC charge. Harlston filed her EEOC charge on November 27, 1991, fifteen days after she received notice of her reassignment and nearly a month after her evaluation. *See Jackson v. Missouri Pac. R.R.,* 803 F.2d 401, 406–07 (8th Cir.1986) (requiring causal connection between protected activity and adverse employment action). Thus, the filing of the EEOC charge could not be the basis for her evaluation or notice of reassignment.

## II.

Harlston next argues that the district court erred in entering summary judgment on her race and age discrimination claims.

Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "In reviewing a district court's grant of summary judgment, this court applies the same standard as the district court and views the facts in the light most favorable to the nonmovant, giving it the benefit of all reasonable inferences to be drawn from the facts." *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990) (citations omitted).

█ Harlston has the initial burden of establishing a prima facie case of discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). Harlston argues she established a prima facie case by showing that: 1) she was a member of the protected class; 2) she was meeting the legitimate expectations of her employer; 3) she suffered an adverse employment action; and 4) she was replaced by a younger, white person.

█ Harlston's evidence of race discrimination consisted of McDonnell Douglas' use of the interim evaluation and her receipt of a negative evaluation following a number of positive evaluations. She also testified that her reason for believing the performance review was racially discriminatory was that the supervisor who wrote it had just become her supervisor one or two weeks earlier, yet he evaluated her for the period of May through August. She cites her supervisor's comment that she was "too slow" as direct or circumstantial evidence of age discrimination.

█ The evidence fails to establish that Harlston was adversely treated in being reassigned. She was reassigned but suffered no diminution in her title, salary, or benefits. The substance of Harlston's complaint is that the job to which she was reassigned involved fewer secretarial duties and was more stressful in that she had to watch the door, listen for the fax, and be in charge of security for people coming in and out of the area. This describes nothing "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993). Changes in duties or working conditions that cause no materially significant disadvantage, such as Harlston's reassignment, are insufficient to establish the adverse conduct required to make a prima facie case. *Id.* at 135–36; *Spring v. Sheboygan Area School Dist.,* 865 F.2d 883 (7th Cir.1989). Further, Harlston presents no facts to support her belief that she was assigned to a new supervisor to facilitate her removal from her position. Thus, Harlston failed to make a prima facie case on her reassignment claim.

There is a similar lack of evidence on Harlston's evaluation claim. She needed to prove that McDonnell Douglas afforded better treatment to someone younger or of a different race. *See, e.g., St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Harlston could not identify any individuals who were similarly situated and received better evaluations. She admitted that she knew of no white or younger employees who received better evaluations from her supervisor. Therefore, she failed to make a prima facie case of discrimination on the evaluation claim.

Because Harlston's evidence produced in response to a motion for summary judgment fails to establish a prima facie case, the district court did not err in granting summary judgment. The district judge went no further in deciding this case, nor do we. While McDonnell Douglas argues that it articulated legitimate nondiscriminatory reasons for Harlston's treatment, and that Harlston failed to adduce evidence that its reasons were pretextual, we need not go past Harlston's failure to present a prima facie case. Were we to do so, we might needlessly encounter the shoals discussed in *Gaworski v. ITT Commercial Finance Corp.,* 17 F.3d 1104 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 355, —— L.Ed.2d —— (1994).

We affirm the district court's judgment.